# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

SOUTHERN FOREST WATCH, INC., )
et al., )
　　　　　　　　　　　　　　　 )
　　　Plaintiffs, 　　　　　　　 )　　　Civil Action No.
v. 　　　　　　　　　　　　　　 )　　　3:13-cv-116-JMH-HBG
　　　　　　　　　　　　　　　 )
SECRETARY OF THE INTERIOR, 　 )　　　**MEMORANDUM OPINION**
SALLY JEWELL, et al., 　　　　　 )　　　**AND ORDER**
　　　　　　　　　　　　　　　 )
　　　Defendants. 　　　　　　　 )

***

This matter is before the Court upon the Joint Motion to Dismiss for Lack of Jurisdiction [D.E. 14] filed by Defendants Sally Jewell, Secretary of the Interior, Jonathan B. Jarvis, Director of the National Park Service, Dale A. Ditmanson, Superintendent of the Great Smoky Mountains National Park, and Patricia Wissinger, Assistant Superintendent of the Great Smoky Mountains National Park, as well as Plaintiffs' Motion for Discovery. [D.E. 25]. Each motion has been fully briefed. [D.E. 18; 27; 30; 31]. This matter being fully briefed, and the Court being otherwise sufficiently advised, it is now ripe for review.

## I. Procedural Background

The National Park Service (NPS) approved a $4.00 per person, per night fee for backcountry camping and shelters, pursuant to the Federal Lands Recreation Act (FLREA), 16 U.S.C. § 6801, *et seq*. Additionally, the NPS instituted an online

reservation system for obtaining permits and paying the $4.00 permit fee to camp in the backcountry of the Great Smoky Mountains.

Plaintiffs allege that, of the backcountry campsites within the Great Smoky Mountains National Park, eighty percent "are unrestricted on use other than registering the party and vehicles upon arrival at certain trailheads and designating destinations and itineraries for backcamping trips." [D.E. 24 at 11]. The other twenty percent of campsites, according to Plaintiffs, are reservation campsites. Plaintiffs claim that under the old reservation system there were no fees, and reservations could be made in advance by calling the park or by registering in person the day of the trip. [D.E. 24 at 12-13]. Plaintiffs allege that this system "worked perfectly and seamlessly." [D.E. 24 at 14].

Plaintiffs filed this action challenging the imposition of the new permit system, specifically the implementation of an online reservation system and backcountry camping fee in the Great Smoky Mountains National Park. Plaintiffs allege that Defendants

> manufactured false justifications and assertions . . .
> in order to dissolve the current working permit system
> for access to the backcountry [sic] sections of the
> Smoky Mountains and to replace it with another
> reservation system in order to assert more control and
> limit access to the backcountry sections of the Smoky
> Mountains.

2

[D.E. 24 at 3-4]. Plaintiffs claim that the new reservation system and fee "is onerous and burdensome to those who wish to backpack" and that Defendants "implemented new and absurd rules and regulations." [D.E. 24 at 4-5].

Under the new system, Plaintiffs allege, a camper must have internet access and a credit card, reservations are allowed thirty days in advance, and the process requires clicking through multiple webpages, which must be done within 15 minutes. [D.E. 24 at 20]. Plaintiffs also note that if you do not have internet access, "reservations can be made by telephone or by personally appearing at Sugarland Visitor Center." [D.E. 24 at 20].

Based upon the imposition of the new online reservation system and $4.00 charge for camping in the backcountry of the Great Smoky Mountains National Park, Plaintiffs bring several claims seeking a declaratory judgment from this Court. In Count I, Plaintiffs seek a declaratory judgment that Defendants violated 16 U.S.C. § 1a-1 by intentionally making public misrepresentations and false assertions. [D.E. 24 at 22-23]. In Count II, Plaintiffs seek a declaratory judgment that the grant of free, exclusive, and privileged use of portions of the park, to the exclusion of the public, violates 16 U.S.C. § 3. [D.E. 24 at 23]. In Count III, Plaintiffs seek a declaratory judgment

3

that Defendants are not allowed to charge a backpacker fee under the Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6801, *et seq.* [D.E. 24 at 23-24]. In Count IV, Plaintiffs seek a declaratory judgment that they are free to backpack anywhere within the Great Smoky Mountains National Park and are not limited to areas designated for collection of the backpacker tax. [D.E. 24 at 24-25]. In Count V, Plaintiffs seek a declaratory judgment that Defendants are not entitled to charge a backpacker fee under 16 U.S.C. § 6802(g) and that the implementation of the online reservation system is in violation of 16 U.S.C. § 1. [D.E. 24 at 25-27]. In Count VI, Plaintiffs seek a declaratory judgment that the online reservation system and backpacker tax exceeds the authority provided to Defendants. [D.E. 24 at 27]. In Count VII, Plaintiffs seek a declaratory judgment, under the Administrative Procedures Act, that the decision to implement the online reservation system and backpacker tax was arbitrary and capricious. [D.E. 24 at 28-29]. In Count VIII, Plaintiffs seek a declaratory judgment that Defendants failed to comply with 16 U.S.C. § 6803 and 5 U.S.C. § 553, which require public participation before agency action. [D.E. 24 at 29]. In Count IX, Plaintiffs seek a declaratory judgment that the promulgation of the online reservation system and backpacker tax was arbitrary, capricious, an abuse of

discretion, and in violation of 5 U.S.C. § 706(2)(A). [D.E. 24 at 30].

Defendants have filed a Motion to Dismiss alleging that Plaintiffs lack standing to challenge the imposition of the online reservation system and backpacker tax, that Plaintiffs' claims are barred by sovereign immunity, and that the Plaintiffs have not asserted an independent cause of action that would allow the Court to issue a declaratory judgment. Plaintiffs respond by asserting that they have concrete injuries, as they have used the online reservation system and paid the backpacker fee, and that sovereign immunity does not apply.

Plaintiffs have filed a Motion for Discovery requesting that this Court allow discovery to go outside the administrative record. [D.E. 25]. Plaintiffs believe discovery on this matter should go forth based on the possibility that portions of the administrative record have been deleted and that some of the causes of action do not focus on the online reservation system and backpacker registration fee. [D.E. 25] In response, Defendants make many of the same arguments found within their Motion to Dismiss and also argue that review of agency decisions, instituted pursuant to the Administrative Procedure Act, is limited to review of the administrative record. [D.E. 30].

## II. Standard of Review

A party may assert a claim of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). "The plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). "The plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.' A federal claim is substantial unless 'prior decisions inescapably render it frivolous.'" *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996) (quoting *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984)). "The plaintiff will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Mich. S. R.R. Co.*, 287 F.3d at 573 (citations omitted).

A party may present the defense of failure to state a claim upon which relief can be granted through motion. Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and must accept as true "well-pleaded facts" set forth in the complaint. *Morgan v. Church's Fried*

6

*Chicken,* 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997) (citations omitted). If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim to relief that is plausible on its face," then the claims must be dismissed. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 542 (6th Cir. 2007). Further, the complaint must establish "enough fact to raise a reasonable expectation that discovery will reveal evidence" to show the averments are factually plausible. *Twombly,* 550 U.S. at 556. While the Court presumes all factual allegations to be true and makes all reasonable inferences in favor of Plaintiffs, the Court does not have to "accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). If the "complaint does not contain any factual allegation sufficient to plausibly suggest" each essential element of the averred violation, it does not contain enough factual content to nudge the claim across the line from conceivable to plausible, and must be dismissed. *Ashcroft v. Iqbal,* 556 U.S. 662, 680-83 (2009).

## III. Analysis

### A. Motion to Dismiss

Plaintiffs have not alleged a factual basis to create an injury in fact due to the NPS' decision to create an online reservation fee, but have alleged an injury in fact to create standing to challenge the imposition of a backcountry permit fee. Plaintiffs have asserted claims under the Administrative Procedure Act, creating subject-matter jurisdiction under 28 U.S.C. § 1331, and the NPS has not made discretionary decisions falling under the narrow exception to the grant of jurisdiction found in 5 U.S.C. § 702(a)(2). Therefore, Plaintiffs claims seeking declaratory relief on the subject of the backcountry camping fee may go forth.

### 1. Standing

Defendants allege that Plaintiffs do not have standing to challenge the online reservation system implemented at the Great Smoky Mountains National Park. To meet the constitutional requirements of standing, Plaintiffs must show that they

> have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'[;] . . . there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent act of some third party not before the court[;] . . . [and] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)
(citations omitted). "An association," such as Southern Forest
Watch, Inc.,

> has standing to bring suit on behalf of its members
> when: (a) its members would otherwise have standing to
> sue in their own right; (b) the interests it seeks to
> protect are germane to the organization's purpose; and
> (c) neither the claim asserted nor the relief
> requested requires the participation of individual
> members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343
(1977). Defendants do not claim that Plaintiffs have not met the
"prudential requirements for standing developed by the Supreme
Court," and the Court finds that they are not at issue in this
case. *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d
197, 206 (6th Cir. 2011).

Defendants argue that the Plaintiffs have not shown an
injury in fact, and, thus, have no standing to challenge the
online reservation system. Plaintiffs do not explicitly set
forth the concrete injury they have suffered, but state that the
"new registration system, in and of itself, is an impairment or
a burden, especially when compared with the registration system
that has been employed for decades." [D.E. 19 at 4]. Plaintiffs
go on to claim that "[t]he new backpacker registration system is
more onerous, difficult, an impairment, *etc*." [D.E. 19 at 5].
However, Plaintiffs also note, in their Amended Complaint, that

> if one does not have email or internet access,
> reservations can be made by telephone or by personally
> appearing at Sugarland Visitor Center in the Smoky
> Mountains to pay cash and manually pick up a camping
> permit. Defendants are advising callers they can also
> fax a copy of the camping permit to a backpacker.

[D.E. 24 at 20].

These particular Plaintiffs have not alleged an injury such that they have standing to challenge the online reservation system. Plaintiffs assert that they have been injured because the online reservation system is "burdensome," especially when compared to the old system. However, a review of receipts provided by Plaintiffs shows that all individual Plaintiffs were able to access the online reservation system and obtain a permit through the use of the online reservation system. Thus, Plaintiffs have not stated an injury in fact for purposes of standing because they have not shown that the online reservation system is so burdensome that they cannot use the system to obtain a permit.

The facts of this case can be analogized to those in a case brought under the Americans with Disabilities Act. In *Sharp v. Capitol City Brewing Co.,* a quadriplegic brought suit because a portable trash can in a water closet did not leave enough room for a person in a wheelchair to transfer herself to the water closet. 680 F. Supp. 2d 51, 58 (D.D.C. 2010). However, the district court found that there was no injury in fact because

the "plaintiff's disability [was] such that he [could not] transfer himself to a water closet whether a trash can was in his way or not." *Id.* Thus, "the trash can [did] not prevent plaintiff from engaging in any activity he could otherwise perform." *Id.* Similarly, Plaintiffs have not alleged that the online reservation system burdens them to such a degree that they cannot obtain a permit to camp in the backcountry of the Great Smoky Mountains. In fact, Plaintiffs have provided receipts showing they were able to utilize the online reservation system to obtain permits. [D.E. 24-11 at 1-3]. Thus, the online reservation system has not prevented Plaintiffs from engaging in an activity in which they could otherwise engage.

Plaintiffs may prefer the old reservation system to the online reservation system, but Plaintiffs desire for the old voluntary reservation system does not allege an injury in fact that creates a case or controversy, thereby giving this Court jurisdiction. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course a de minimis level of imposition with which the Constitution is not concerned."); *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972) ("[The goal of putting review] in the hands of those who have a direct stake in the outcome . . . . would be undermined were we to construe the APA to authorize judicial review at the behest of organizations or individuals

who seek to do no more than vindicate their own value preferences through the judicial process.").

The Court stresses that it is not holding that no person has standing to challenge the online reservation system. *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688 (1973) ("To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody. We cannot accept that conclusion."). Rather, the Court is holding that these particular Plaintiffs have not set forth an injury in fact. For example, a party who could show that they could not operate the online reservation system to obtain a permit may be able to show an injury in fact, but these particular Plaintiffs have provided evidence that they could competently use the online reservation system in such a way to obtain a permit.

As the individual Plaintiffs do not have standing to challenge the online reservation system, the Court will not grant a declaratory judgment pertaining to the implementation of the online reservation system under any of the claims for declaratory relief. Furthermore, Plaintiff Southern Forest Watch, Inc. has not shown that "its members would otherwise have standing to sue in their own right," so it also does not have

standing to challenge the implementation of the online reservation system. *See Hunt*, 432 U.S. at 343.

In their Reply, Defendants assert that they no longer contest Plaintiffs standing to challenge the imposition of the backcountry camping fee established under the FLREA. As Plaintiffs have actually incurred the cost of the new camping fee, the Court agrees with Defendants assessment, and finds that the individual Plaintiffs have suffered an injury in fact through the payment of the fee. *See Williams v. Redflex Traffic Sys., Inc.*, 582 F.3d 617, 620 (6th Cir. 2009) ("[W]ithout having been injured by these procedures, she resembles a mere outsider with a non-justiciable 'general grievance.'" (citing *United States v. Hays*, 515 U.S. 737, 743 (1995))).

Plaintiff Southern Forest Watch, Inc., as an association, also meets the requirements to have standing to challenge the imposition of the backcountry tax. First, as has been established, individual members have standing to sue in their own right. While not found in the pleadings, the "primary purpose" of the organization appears to be "to stop the illegal backcountry tax in its tracks." Southern Forest Watch, http://www.southernhighlanders.com/Backcountrytax.html (last visited Mar. 18, 2014). Finally, while individual members are involved in the suit, there is no reason their participation should be required.

13

Plaintiffs also seek a declaratory judgment based on, what they describe as, Defendants' decision to grant licenses and rights "to private entities and political elites on such terms to interfere with the free access" to the Great Smoky Mountains National Park. [D.E. 24 at 23]. Plaintiffs have met the standing requirements to challenge this decision. Plaintiffs, by alleging that they wish to use this portion of the park for hiking, have alleged a concrete injury. *See Jackson Hole Conservation Alliance v. Babbitt*, 96 F. Supp. 2d 1288, 1293 (D. Wyo. 2000) ("[T]he proximity of Mr. Sheahan's residence to the site of the Proposed Action, and his frequent use of the area, demonstrate his concrete interest in the dispute by virtue of his 'geographical nexus to' and 'actual use of' the area affected by the Proposed Action." (quoting *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 450-51 (10th Cir. 1996))); [D.E. 24 at 5] ("Plaintiffs have offered many solutions and tried repeatedly by any number of efforts to resolve this issue with the defendants in order to continue backpacking unimpaired in the Smoky Mountains."). Further, the injury can be traced to the Defendants' decision to grant a license to the private entities, and a declaratory judgment that the decision did not comply with relevant law will redress the injury. *See Lujan*, 504 U.S. at 560-61.

**2. Sovereign Immunity**

Defendants next assert that Plaintiffs cannot challenge the discretionary decision of the NPS to implement an online reservation system and to charge a backcountry camping fee due to the operation of sovereign immunity. Defendants claim that these were decisions committed to agency discretion by law, and, therefore, sovereign immunity has not been waived under the Administrative Procedure Act (APA). As the Court has found Plaintiffs do not have standing to challenge the creation of an online reservation system, the Court's analysis of sovereign immunity will focus on the backpacker permit fee and decision of the NPS to lease or license portions of the park.

Plaintiffs and Defendants agree that the decision of the NPS to implement a fee and online reservation system is governed by the APA. The APA provides judicial review of agency decisions, 5 U.S.C. § 702, but makes an exception for "agency action . . . committed to agency discretion by law. 5 U.S.C. § 701(a)(2); *see Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (quoting 5 U.S.C. § 701(a)(2)) ("[I]t is the Administrative Procedure Act (APA) that codifies the nature and attributes of judicial review, including the traditional principle of its unavailability 'to the extent that agency action is committed to agency discretion by law.'"). Subsection (a)(2) applies "in those rare instances where

15

'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)); *see also Diebold v. United States*, 947 F.2d 787, 789 (6th Cir. 1991) ("Agency action generally is considered committed to agency discretion where there is 'no law to apply.'" (citations omitted)). Thus, sovereign immunity applies only if there is no law to apply.

To determine if there is law to apply the Court must look to the statutory authority and regulations issued pursuant to the relevant statutes. *See Diebold*, 947 F.2d at 796 (finding that, to determine if the 5 U.S.C § 701(a)(2) exception applies, a court must first look to general statutes, then specific statutes, and, finally, regulations issued pursuant to those statutes).

First, the Court must look to the general statute, 16 U.S.C. § 1. This statute creates the NPS, the position of Director, Deputy Director, and allows for "subordinate officers, clerks, and employees as may be appropriated for by Congress." 16 U.S.C. § 1. The purpose of the creation of national parks "is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." *Id.*

16

Additionally, Congress has passed a specific statute allowing for the imposition of recreation fees, based on specific criteria, and imposing limitations on the ability to charge fees for camping at undeveloped sites. 16 U.S.C. § 6802.

The regulations governing the NPS provide that "the superintendent may . . . [d]esignate areas for a specific use or activity, or impose conditions or restrictions on a use or activity." 36 CFR § 1.5(a)(2). That section also provides that:

> Except in emergency situations, a closure, designation, use or activity restriction or condition, or the termination or relaxation of such, which is of a nature, magnitude and duration that will result in a significant alteration in the public use pattern of the park area, adversely affect the park's natural, aesthetic, scenic or cultural values, require a long-term or significant modification in the resource management objectives of the unit, or is of a highly controversial nature, shall be published as rulemaking in the Federal Register.

*Id.* § 1.5(b). "To implement a public use limit, the superintendent may establish a permit, registration, or reservation system." *Id.* § 1.5(d). The next section, 36 CFR § 1.6 provides requirements for a permit system. Further, "[t]he superintendent may require permits, designate sites or areas, and establish conditions for camping." 36 CFR § 2.10. One type of fee allowed to be charged is a "[d]aily recreation use fee[] for the use of specialized sites, facilities, equipment or services furnished at Federal expense." 36 CFR § 71.2.

17

There are also statutes and regulations governing the NPS'
decision to grant a license to a private party. "No natural,
curiosities, wonders, or objects of interest shall be leased,
rented, or granted to anyone on such terms as to interfere with
free access to them by the public." 16 U.S.C. § 3. Further, the
Code of Federal Regulations provides multiple requirements the
NPS must comply with when deciding whether to lease park areas.
36 C.F.R. §§ 18.1 – .12.

Therefore, as the statutes and C.F.R. clearly lay out
standards by which to judge the superintendent's conduct, the
superintendent's decision to implement a backpacker registration
fee and decision to lease part of the park does not fall within
the limited exception for sovereign immunity granted by 5 U.S.C.
§ 701.

### 3. Lack of Subject-Matter Jurisdiction

Defendants further argue that Plaintiffs' claims should be
dismissed for lack of subject-matter jurisdiction because the
Declaratory Judgment Act does not provide an independent basis
of subject-matter jurisdiction. However, Plaintiffs do not rely
on the Declaratory Judgment Act as a means for subject-matter
jurisdiction. Rather, Plaintiffs, in the first paragraph of
their amended complaint, state that the Court has subject-matter
jurisdiction pursuant to 28 U.S.C. § 1331.

The Court has subject-matter jurisdiction over the claims under 28 U.S.C. § 1331, through operation of the APA.

> [W]e note that . . . the National Park Service organic statute, 16 U.S.C. § 1 *et seq.* [does not] provide[] directly for judicial review, and [does not] create[] a private right of action. . . . However, even absent a statutory cause of action, [plaintiff] may challenge the agency's authority under the APA. [Plaintiff] may therefore challenge the National Park Service's 9B regulations under the APA, and this Court will have federal question jurisdiction under 28 U.S.C. § 1331.

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997) (citations omitted). Thus, Plaintiffs may challenge the superintendent's decision to implement the backpacker registration fee under the APA, and this Court will have jurisdiction under 28 U.S.C. § 1331.[1]

## B. Motion for Discovery

Plaintiffs ask this Court to allow discovery outside of the administrative record. However, as Plaintiffs provide no evidence, other than bare assertions of possible misconduct, with which this Court can decide whether supplementation of the record is necessary, the motion for discovery beyond the administrative record must be denied.

---

[1] Although not raised by either party, the Court notes that Plaintiffs were not required to exhaust their administrative remedies because neither the statutes nor regulations require exhaustion before pursuing judicial review. *See Conservation Force v. Salazar*, 919 F. Supp. 2d 85, 89 (D.D.C. 2013) ("Under the APA, administrative exhaustion is required when it is mandated by statute or agency rule." (citing *Darby v. Cisneros*, 509 U.S. 137, 146 (1993))).

As a general matter, courts confine their review to the administrative record, which includes all materials compiled by the agency that were before the agency at the time the decision was made. Several reasons justify supplementation of the administrative record, such as when an agency deliberately or negligently excludes certain documents, or when the court needs certain background information in order to determine whether the agency considered all of the relevant factors. Courts have suggested that in order to justify supplementation, a plaintiff must make a strong showing of bad faith.

*Sierra Club v. Slater*, 120 F.3d 623, 628 (6th Cir. 1997) (internal quotation marks omitted) (citations omitted).

Plaintiffs simply have not put forth the evidence required for the Court to allow discovery beyond the administrative record. Plaintiffs' bald assertions and questions about the possibility of bad faith on the part of the NPS is simply not enough for the Court to allow discovery beyond the administrative record. *See, e.g.*, [D.E. 26 at 3] ("How does the Court know what has been deleted from and/or added to the federal administrative record maintained by the government, particularly in the time frame the issues arose?"). If, after review of the administrative record, Plaintiffs have evidence with which they can put forth a good faith claim to justify supplementation, Plaintiffs may renew their motion.

## IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

20

(1) that Defendant's Motion to Dismiss [D.E. 14] be, and the same hereby is, **GRANTED IN PART**, in that Plaintiffs do not have standing to challenge the imposition of an online reservation system, and **DENIED IN PART**, in that Plaintiffs may proceed on their claims challenging the imposition of the backpacker permit camping fee and decision to grant a license;

(2) that Plaintiff's Motion for Discovery [D.E. 25] be, and the same hereby is, **DENIED WITHOUT PREJUDICE**.

This the 24th day of March, 2014.

Sitting by designation:

**Signed By:**

*Joseph M. Hood*

**Senior U.S. District Judge**